UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA, and PETER D'ASCOLI, M.D., | ) ) ) ) ) | Civ. 02-4009-KES |
| Plaintiffs, | ) ) | ORDER AWARDING ATTORNEYS' FEES |
| vs. | ) ) | AND EXPENSES |
| M. MICHAEL ROUNDS, Governor, and ROBERT L. FERRELL, M.D., President, South Dakota Board of Medical and Osteopathic Examiners, in their official capacity. | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs Planned Parenthood Minnesota, North Dakota, South Dakota, and Peter D'Ascoli, M.D., move for an award of attorneys' fees and expenses. Defendants M. Michael Rounds and Robert L. Ferrell (collectively referred to as the State) agree that plaintiffs are entitled to a fee award, but object to the amount of fees requested.

**BACKGROUND**

Plaintiffs filed suit under 42 U.S.C. § 1983 to enjoin enforcement of SDCL 34-23A-4 and 34-23A-6.  In pertinent part, SDCL 34-23A-4 requires that all abortions performed after the twelfth week of pregnancy be performed in a hospital and in a clinic only if no hospital is available.  SDCL 34-23A-6 permits abortions after the twelfth week of pregnancy to be performed outside

of a hospital only if the "facility has a blood bank or a sufficient supply of blood immediately available . . . ."

Plaintiffs amended their complaint to contest the constitutionality of the blood supply requirement. (Docket 161). On the eve of trial, plaintiffs and the State reached a settlement agreement, which was subsequently memorialized in a consent decree, stating that plaintiffs' Sioux Falls clinic has a sufficient supply of blood immediately available to perform abortions through 14 weeks, 6 days LMP[1] without violating SDCL 34-23A-4. (Docket 237). Plaintiffs now move for an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(b).

## DISCUSSION

### I.   Attorneys' Fees

Plaintiffs seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b). Section 1988 permits an award of "a reasonable attorney's fee as part of the costs" to the prevailing party, other than the United States, in a § 1983 action. Prevailing parties should ordinarily recover reasonable attorneys' fees "'unless special circumstances would render such an award unjust.'" Carhart v. Stenberg, 192 F.3d 1142, 1152 (8th Cir. 1999), aff'd, 530 U.S. 914, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000). "In providing for

---

[1]"LMP" is a method of measuring the length of a woman's pregnancy that is calculated by counting the time since the first day of the woman's last menstrual period. (Docket 161, at ¶ 14).

attorney fee awards in civil rights cases, Congress intended to 'promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators.'" Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting Casey v. City of Cabool, Mo., 12 F.3d 799, 805 (8th Cir. 1993)).[2] "The fee applicant bears the burden of establishing entitlement to the award and documenting the appropriate hours expended and hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 852 (8th Cir. 2002).

Plaintiffs who obtain a consent decree favorably terminating the litigation are prevailing parties entitled to a reasonable attorneys' fee award. See Cody v. Hillard, 304 F.3d 767, 773 (8th Cir. 2002) ("[A] plaintiff who obtains either an enforceable judgment on the merits or a court-ordered consent decree has established the required judicially sanctioned change in legal relationship, and so is a prevailing party."); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).  Indeed, the State concedes that plaintiffs are prevailing parties entitled to recover reasonable attorneys' fees.

---

[2] Even though Emery involves 42 U.S.C. § 1973l(e), which is the fee shifting statute for actions under the Voting Rights Act, courts, at least for all purposes relevant here, interpret § 1988 and § 1973l(e) identically.  See Emery v. Hunt, 132 F. Supp. 2d 803, 805 (D.S.D. 2001), rev'd on other grounds by 272 F.3d 1042 (8th Cir. 2001).

The State argues, however, that the amount of the fees requested is unreasonable and should be reduced.

In determining a reasonable attorneys' fee award, the court begins by figuring the lodestar, "'which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005). The court excludes hours unreasonably spent from the lodestar calculation. See Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003). Although the lodestar is presumed to be a reasonable fee, the court may, in some circumstances, adjust the award after considering additional factors. See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); see also McDonald v. Armontrout, 860 F.2d 1456, 1459 (8th Cir. 1988). Most of the factors will be accounted for, however, in the lodestar calculation. See Hensley v. Eckerhart, 461 U.S. 424, 432 n.9, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

### A.    Reasonable Hourly Rates

The court begins the lodestar calculation by determining the reasonable hourly rates for each attorney. Plaintiffs request $400 per hour for Roger Evans; $300 per hour for Helene Krasnoff; $275 per hour for Mimi Liu; and $175 per hour for Michael Crew. In addition, Krasnoff and Liu request one-half these rates for travel time. The rates for Evans, Krasnoff, and Liu are based upon the market for attorneys' fees in Minneapolis, Minnesota.

4

The State does not object to the hourly rate requested by Crew, and the court finds that $175 per hour is a reasonable rate.  Accordingly, the court will calculate the lodestar for Crew using an hourly rate of $175 per hour.

The State does object to the rates requested by Evans, Krasnoff, and Liu.  The State argues that the reasonable hourly rate should be determined using the local market for attorneys' fees rather than the Minneapolis market. The State provides expert testimony indicating that experienced attorneys in South Dakota would charge up to $200 per hour for work of this type, and that less experienced attorneys would charge between $125 and $175 per hour.

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." Emery, 272 F.3d at 1048. Sometimes, however, out-of-town counsel will be entitled to a higher rate than the local rate.  See Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir. 1982).  "In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." Emery, 272 F.3d at 1048.  In addition, attorneys specializing in complex areas of the law may be entitled to a higher, non-local rate because the attorneys' familiarity with the law will enable them to handle the case in a shorter time period.  See Planned Parenthood, Sioux Falls Clinic

5

v. Miller, 70 F.3d 517, 519 (8th Cir. 1995).  "To limit rates to those prevailing

in a local community might have the effect of limiting civil rights enforcement

to those communities where the rates are sufficient to attract experienced

counsel."  Casey v. City of Cabool, Mo., 12 F.3d 799, 806 (8th Cir. 1993).

Here, the court finds that Minneapolis provides the proper market for

determining a reasonable hourly rate.  Plaintiffs present evidence that they

were unable to retain an attorney in South Dakota willing to take this case.

Krasnoff stated in her declaration that she contacted ten different attorneys in

Sioux Falls, South Dakota, and that none were willing to represent plaintiffs,

and in particular Planned Parenthood Minnesota, North Dakota, South

Dakota, in an abortion case.  (Docket 254-1, at ¶ 8).  In addition, Crew, who is

a Sioux Falls attorney, stated that he was unaware of any South Dakota

attorneys who would be willing to be lead counsel in a challenge to an

abortion-related statute.  (Docket 258-1, at ¶ 9).

The State presents no evidence rebutting the assertion that no South

Dakota attorneys would have been willing to represent plaintiffs.  Instead, the

State argues that plaintiffs did not make diligent, good faith efforts to find a

local lead counsel because plaintiffs only contacted attorneys in the Sioux

Falls area.  The court disagrees that a diligent, good faith effort required

plaintiffs to look outside the Sioux Falls area in this case.  Plaintiffs' office is

in Sioux Falls.  The case was filed in the Southern Division of the District of

South Dakota, which sits in Sioux Falls.  And, most importantly, Sioux Falls is the largest, most metropolitan community in South Dakota with the largest bar.  In short, the evidence indicates that plaintiffs exhibited diligent, good faith efforts to retain lead counsel in South Dakota but were unsuccessful.  This in turn makes out-of-state rates, and in particular Minneapolis rates, reasonable.  See Emery, 272 F.3d at 1048.

More importantly, the court finds that Minneapolis rates are appropriate because Evans, Krasnoff, and Liu specialize in reproductive rights law.  Evans is one of the preeminent reproductive rights attorneys in the United States.  Over the last 27 years, he has been involved in some capacity in over 200 civil rights cases.  (Docket 256-1, at ¶ 5).  He also has appeared as either lead or co-counsel in nearly all of the reproductive rights cases before the United States Supreme Court in the last two decades.  (Docket 256-1, at ¶ 3).  Although less experienced, Krasnoff and Liu also specialize in reproductive rights.  Krasnoff has been with Planned Parenthood Federation of America (PPFA) since 2000 and has spent approximately half of her time since then challenging statutory restrictions on abortion.  (Docket 254-1, ¶ 3).  She has served as both lead counsel and as a part of the trial team on other reproductive rights litigation.  (Docket 254-1, at ¶ 6).  Similarly, Liu works for PPFA and spends three quarters of her time litigating reproductive rights cases.  (Docket 255-1, at ¶ 3).  In addition, before coming to PPFA, Liu served

7

on a trial team that successfully challenged the federal ban on "partial birth abortion." (Docket 255-1, at ¶ 5).  Crew indicates that he is unaware of any South Dakota attorneys with comparable experience in reproductive rights law as Evans, Krasnoff, and Liu.  (Docket 258-1, at ¶ 9).  Although several South Dakota attorneys could have competently handled this case, plaintiffs' counsels' expertise in reproductive law enabled them to effectively litigate this case in a shorter amount of time.  This in turn makes an out-of-state rate appropriate.  Indeed, the Court of Appeals for the Eighth Circuit explicitly found that out-of-state rates were appropriate in a previous reproductive rights case litigated in South Dakota because the out-of-state counsel "do this kind of work routinely." Planned Parenthood, Sioux Falls Clinic, 70 F.3d at 519.

Using Minneapolis as the relative market, the court finds that hourly rates requested by plaintiffs are reasonable.  Plaintiffs request $400 per hour for Evans.  As noted above, Evans is one of the preeminent reproductive rights attorneys in the United States.  Plaintiffs present the expert testimony of Judith Langevin, an attorney in Minneapolis with over thirty years of experience.  Langevin indicates that a partner at her firm with Evans' experience would likely bill more than $425 hour.  (Docket 257, at ¶ 7).  In addition, the United States District Court for District of South Carolina recently awarded Evans $475 per hour.  (Docket 255-3, at 7).  Based on the

foregoing, the court finds that a reasonable hourly rate for Evans is $400 per hour.

Plaintiffs request $300 per hour for Krasnoff.  Again, plaintiffs present expert testimony that an attorney with Krasnoff's experience would charge $300 per hour in Minneapolis.  (Docket 257, at ¶ 8).  In addition, an attorney with comparable experience recently received $350 per hour in a reproductive rights case.  (Docket 255-3, at 8).  As such, the court finds that Krasnoff's requested rate of $300 per hour is reasonable.  $150 per hour for travel time is reasonable as well.   See McDonald, 860 F.3d at 1463 (affirming district court's decision to reduce hourly rate for travel time by 50 percent).

Plaintiffs seek $275 per hour for Liu.  Plaintiffs' expert opines that an attorney with Liu's experience would bill between $250 and $280 per hour.  (Docket 257, at ¶ 9).  Based on this testimony, the court finds that the requested rates of $275 per hour and $137 per hour for travel time are reasonable.

The State argues that the court should limit the hourly rate awarded to the hourly rate previously requested by plaintiffs in this case.  Specifically, the State argues that the court should not award rates exceeding $350 per hour for Evans and $240 per hour for Krasnoff because these were the rates sought in plaintiffs' fee request filed on April 30, 2003.  (Docket 114).  The State argues that attorneys with private clients would not normally increase their

9

rate in the middle of a case, and thus, it was unreasonable for plaintiffs to do so here.

Plaintiffs respond by arguing that the delay in recovery combined with the time value of money makes an award based upon their attorneys' current rates appropriate.  Plaintiffs' argument relies on the Supreme Court's decision in Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).  In Jenkins ex rel. Agyei, the Supreme Court acknowledged the impact of the time value of money on fee shifting statutes.  The Court noted that "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."  Id. at 283, 109 S. Ct. at 2469.  Courts compensate for this delay "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  Id. at 282, 109 S. Ct. at 2468; see also Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir. 1993) (holding district court abused its discretion in reducing the hourly rate from the current rate to the rate charged by counsel at the time the services were performed).

Here, the court finds that the time value of money and the delay in recovery makes an award based upon the attorneys' current hourly rates reasonable.  Plaintiffs' previous attorneys' fee request was filed over three

10

years ago.  (Docket 114).  In addition, the pending fee request represents payment for legal services provided since June of 2004, nearly two years ago. (Docket 254-2, at 1).  In light of the delayed nature of plaintiffs' counsels' recovery for their services, the court will calculate the lodestar using the hourly rate requested by plaintiffs, which represents plaintiffs' attorneys' current rate.  See Jenkins ex rel. Agyei, 491 U.S. at 282, 109 S. Ct. at 2468.

**B.    Reasonable Hours Expended**

The court next determines the reasonable amount of hours expended on the litigation.  Plaintiffs request: 39 hours (36.5 merits + 2.5 fee) for Evans;[3] 388.25 hours (381.25 merits + 7 fee) for Krasnoff plus 27.5 hours of travel time; 569.5 hours (534.5 merits +3.5 fees) for Liu plus 37.5 hours of travel time; and 24.1 hours for Crew.  In addition, plaintiffs supplement their initial request by asking for an additional 30 hours Liu and 3.5 hours Evans spent preparing the reply memorandum in support of the pending motion for attorneys' fees.  (Docket 237-1).

The State does not object to the number of hours requested for Crew. The court has reviewed Crew's billing statements and finds that the hours

---

[3] For clarity, the following labels are used:  "merits" refers to hours reasonably expended on the merits of the litigation; "travel" refers to hours reasonably expended on travel time; and "fee" refers to hours reasonably expended preparing the fee application.

requested are reasonable for local counsel.  Accordingly, the court will calculate the lodestar using 24.1 hours for Crew.

The State does, however, object to the hours requested by Evans, Krasnoff, and Liu.  The State argues that Evans, Krasnoff, and Liu unreasonably duplicated their efforts, and thus, the hours requested should be reduced accordingly.  If multiple attorneys represent a prevailing party, then that party may be able to recover a reasonable fee for each of the attorneys.  "The proper question is whether the application, for one or more attorneys, is reasonable . . . . " Schultz v. Amick, 955 F. Supp. 1087, 1115 (N.D. Iowa 1997).  "A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." A.J. ex rel. L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995). Plaintiffs acknowledge that some duplication of effort has occurred, and thus, plaintiffs voluntarily reduced by 15 percent the amount of fees requested after March 2, 2002, for merits and travel.

The State objects to all the hours requested by Evans as unreasonably duplicated efforts.  The State points out that most of Evans' time was spent conferring with co-counsel or reviewing co-counsel's work.  This, however, would be expected because of Evans' role in the litigation as a supervising attorney with unparalleled experience in reproductive rights law.  Krasnoff and Liu reasonably tapped this wealth of legal and strategic knowledge.  Just

12

because Evans' time was spent conferring with co-counsel, this does not make it per se unreasonably expended.  See Glover v. Johnson, 138 F.3d 229, 254 (6th Cir. 1998) (stating that time spent conferring on case with co-counsel is recoverable if reasonably expended).

On a whole, the court finds that most of Evans' time was reasonably spent.  Plaintiffs only seek 42.5 hours for Evans.  The court finds that this is generally a reasonable amount of time spent for case and trial strategy.  Cf. Christina A. ex rel. Jennifer A. v. Bloomberg, 167 F. Supp. 2d 1094, 1103 (D.S.D. 2001) (noting that "time spent by multiple attorneys in conference with each other can be the product of careful and reasonable preparation"), rev'd on other grounds by 315 F.3d 990 (8th Cir. 2003).  In addition, the court finds that plaintiffs' voluntary 15 percent reduction of the fees requested adequately accounts for any unreasonable duplication of efforts by Evans.[4]  See Houghton v. Sipco, Inc., 828 F. Supp. 631, 646-48 (S.D. Iowa 1993) (reducing award by 10 percent for duplication of efforts when, among other things, there were 302 entries for conferences between counsel), rev'd on other grounds by 38 F.3d 953 (8th Cir. 1994).  In addition to this reduction, the court also excludes 2 hours on April 25, 2005, described as "Met with HTK and ML re witnesses, etc."; 3 hours on May 16, 2005, described as "Talked

---

[4]  The court will adopt plaintiffs' voluntary 15 percent reduction for duplication of effort.

with HTK and ML re discovery issues"; and 1.25 hours on June 13, 2005, described as "Meeting re. balancing test issues." The court excludes these three entries because the descriptions are too vague to enable the court to engage in a meaningful review of the reasonableness of the time expended. See White v. Kelsey, 935 F.2d 968, 970 (8th Cir. 1991) (stating that applicant has burden of documenting that time was spent on recoverable activities). The remaining 30.25 hours that Evans expended on the merits are reasonable. In addition, the court finds that the 6 hours that Evans expended on the fee award brief in this case is also reasonable. Accordingly, the court will calculate the lodestar for Evans using 30.25 hours (36.5 hours – 6.25 hours) for the merits and 6 (2.5 hours + 3.5 hours in supplement) hours for fee.

The State objects to plaintiffs' request for Liu and argues that many of her efforts unreasonably duplicated efforts by Krasnoff. The court has reviewed Liu's billing statements and has indeed found some duplication. For instance, Liu spent 9.5 hours between March 2, 2005, and March 8, 2005, reviewing the case file to familiarize herself with this case. In addition, there are several instances where Liu conferred with either Krasnoff or Evans regarding the case. This may present some instances of duplicated efforts. In addition, Liu billed 5.5 hours on May 11, 2005, to attend the deposition of Harris. Krasnoff appears to be the attorney that deposed Harris.

14

Nevertheless, the court finds that plaintiffs' voluntary reduction of 15 percent of the fee requested sufficiently accounts for any unreasonably duplicated efforts spent by Liu in this case.

In addition to the voluntary 15 percent reduction, the court excludes some additional entries because the time expended on these tasks was unreasonable.  The State objects to the 80.5 hours Liu spent researching, drafting, and consulting with other counsel regarding the pretrial brief in this case.  Although an important document, the pretrial brief is only 24 pages in length.  (Docket 217-1, at 28).  Accordingly, the court finds that it was reasonable for Liu to have spent 50 hours on this document.  This finding is affirmed by the fact that Evans and Krasnoff spent more than 25 additional hours on the pretrial brief.  As such, the court excludes 30.5 hours that Liu spent working on the pretrial brief.

The court also finds that Liu spent unreasonable amounts of time preparing for depositions in this case.  Liu billed 47.25 hours to prepare for the deposition of Seger.  Her entry on May 10, 2005, however, indicates that Seger's deposition only lasted 5 hours.  The court finds that anything more than 20 hours of preparation time is unreasonable, and thus, the court excludes 27.25 hours.  Liu seeks 30 hours to prepare for the deposition of Fiegen.  Fiegen's deposition, however, only lasted 4.5 hours according to the billing entry on May 9, 2005.  Once again, the court finds that anything

15

exceeding 20 hours is unreasonable, and thus, the court excludes 10 hours. The court also excludes 3 hours for an entry dated April 8, 2005, which is identified as "Prep re: depositions."  This entry is so vague that the court cannot determine for whose deposition Liu was preparing, and thus, the court excludes this entry.  See White, 935 F.2d at 970.

The court also finds that Liu spent unreasonable amounts of time preparing for the examination of witnesses at trial.  Under the circumstances of this case, the court finds that no more than 20 hours per witness is appropriate for preparation for direct examination.  Based thereon, the court excludes: 17 hours spent preparing the direct of Looby (37 hours[5] – 20 hours) and 13.25 hours spent preparing for Henshaw (33.25 hours – 20 hours).  The court also finds that anything exceeding 20 hours per witness to prepare for cross-examination is unreasonable, and thus, the court excludes 8.25 hours spent preparing for Seger (28.25 hours – 20 hours) and 5.75 hours spent preparing for Fiegen (25.75 hours – 20 hours).  The court also excludes 2.5 hours on August 6, 2005, because it appears to duplicate an entry billed on August 5, 2005.

---

[5] Liu submits several entries listing preparation time for two different witnesses without explicitly delineating the time spent preparing for each.  In each of these instances, the court presumes that she spent half of the time preparing for each witness.

Finally, the State objects to 65 hours Liu requests for preparing the request for attorneys' fees.  This represents 35 hours to prepare the initial motion and corresponding memorandum.  In addition, Liu billed 30 hours to draft the reply brief.  Time reasonably spent litigating an attorneys' fees award is recoverable.  See Jones v. MacMillan Bloedel Containers, Inc., 685 F.2d 236, 239 (8th Cir. 1982).  Here, the court finds that the 65 hours requested is a reasonable amount of time.  The billing records suggest that the task of litigating the fee award was designated primarily to Liu.  Plaintiffs submitted two briefs, one which was 13 pages long and one which was 15 pages long.  In addition to drafting these briefs, Liu also prepared the appropriate declarations.  The court finds that 65 hours is a reasonable amount of time to complete these tasks.

In short, the court has reviewed Liu's fee request.  The court finds that all the hours requested by Liu are both reasonable and recoverable except as explicitly stated herein.  In total, the court excludes 117.5 hours from Liu's request for time spent on the merits of the case as unreasonable.  In addition, the court will apply the 15 percent voluntary reduction proposed by plaintiffs.  Accordingly, the court will calculate the lodestar for Liu using 417 hours (534.5 hours – 117.5 hours) for merits; 37.5 hours for travel; and 65 hours (35 hours + 30 hours in the supplement) for fee.

17

Regarding Krasnoff, who is the lead attorney in this case, the State only asserts two objections to the hours requested.  First, the State argues that Krasnoff and Liu unreasonably duplicated their efforts in writing the pretrial brief.  The court already reduced the hours awarded for Liu performing this task.  As for Krasnoff, the court finds that plaintiffs' voluntary reduction of 15 percent adequately accounts for any further duplication of efforts between her and Liu while drafting the pretrial brief.  This voluntary reduction also compensates for any other unreasonable duplication of effort by Krasnoff, including any unreasonable time that she spent preparing and attending depositions that Liu conducted and any unreasonable amount of time spent conferring with Evans and Liu.

Second, the State objects to the time that Krasnoff spent preparing the motion for attorneys' fees.  Krasnoff requests 7 hours expended on the attorneys' fees application.  Of that time, 6.25 hours were spent researching attorneys' fee awards and drafting a memo.  The court excludes all 6.25 hours as unreasonably duplicated efforts.  As noted above, Liu was the attorney primarily responsible for litigating the attorneys' fee request.  Liu spent 5.5 hours researching the law relating to attorneys' fee awards and spent approximately another 25 hours drafting the application for fees in this case. Considering the time spent by Liu, the court finds that the 6.25 hours Krasnoff spent researching was unreasonable and duplicitous.  The rest of

18

Krasnoff's requested hours are both reasonable and recoverable, however. Accordingly, the court will calculate the lodestar for Krasnoff using 381.25 hours for merits; 27.5 hours for travel; and .75 hours for fee (7 hours – 6.25 hours).

### C.    Lodestar Amount

Based on the foregoing reasonable hourly rates and hours expended, the lodestar is calculated as follows:

| Name | Hours | Merits | Travel | Fee | |
|------|-------|--------|--------|-----|---|
| Evans $400/hr | 30.25 | $12,100.00 | | | |
| | 6.0 | | | $2,400.00 | |
| Krasnoff $300/hr Travel $150/hr | 381.25 | $114,375.00 | | | |
| | 27.5 | | $4,125.00 | | |
| | 0.75 | | | $225.00 | |
| Liu $275/hr Travel $137/hr | 417.0 | $114,675.00 | | | |
| | 37.5 | | $5,137.50 | | |
| | 65.0 | | | $17,875.00 | |
| Crew $175/hr | 24.10 | $4,217.50 | | | |
| **TOTAL** | | $245,367.50 | $9,262.50 | $20,500.00 | $275,130.00 |

Before determining the final lodestar amount, the court must calculate the amount of plaintiffs' voluntary reduction for duplicated efforts.  The lodestar amount before plaintiffs' voluntary reduction is $275,130.00.  The amount of

the voluntary reduction is $33,545.63.[6]  Accordingly, the final lodestar
amount is $241,584.37.

Now, the court must determine whether to adjust the lodestar amount.
As noted above, the court can adjust the lodestar after considering the
Johnson factors, although most of the factors are considered in determining
the proper lodestar amount.  Hensley, 461 U.S. at 434 n.9, 103 S. Ct. at
1940.  The Johnson factors are: the time and labor spent; the novelty and
difficulty of the legal issues; the skill required to perform the legal services;
the attorneys' opportunity cost in pursuing this case; the attorneys'
expectation when starting the litigation; the time limitations imposed by the
client or the circumstances; the amount at issue and the results achieved; the
attorneys' experience, reputation, and ability; the undesirability of the case;
the nature of the attorney-client relationship; and fee awards in similar cases.
See Emery, 132 F. Supp. 2d at 811.  The court also can decrease the lodestar

_____

[6] To calculate the voluntary 15 percent reduction, the court first
determines the amount of the fees subject to reduction.  Plaintiffs are
voluntarily reducing fees on the merits and travel time.  Plaintiffs are only
reducing the recovery for time spent after March 2, 2005, however, because
that is the date Liu was added to the case.  The court is not reducing the
amount of the award for time spent by Crew because there is no suggestion
that Crew duplicated efforts of remaining counsel.  Based on these criteria, the
court finds that $223,637.50 ($7,600 for Evans' merits + $92,100 for Krasnoff's
merits + $4,125 for Krasnoff's travel + $114,675 for Liu's merits + 5,137.50 for
Liu's travel) in fees are subject to the voluntary 15 percent reduction.  The
court multiplies this amount by 15 percent to calculate a fee reduction amount
of $33,545.63.

if the billing records are too vague to enable the court to determine the reasonableness of a fee request.  See <u>DeGidio v. Pung</u>, 920 F.2d 525, 533 (8th Cir. 1990).  The court remains mindful, however, that "[t]he most critical factor in assessing fees is the degree of success obtained." <u>Fish</u>, 295 F.3d at 852.

The court finds that all the appropriate <u>Johnson</u> factors are accounted for in the lodestar amount.  The novelty and difficulty of the issues, the skills of the attorneys, the attorneys' experience and reputation, and the fee awards in similar cases were all discussed in determining the reasonable hourly rate for Evans, Krasnoff, and Liu.  In addition, the time and labor spent are accounted for in the determination of reasonable hours expended.  The remaining <u>Johnson</u> factors are inapplicable to this case.

The State seeks a reduction of the lodestar for inadequate billing records.  The State argues that the billing statements submitted are so vague that the court cannot determine the reasonableness of hours expended.  Although the court recognizes its power to reduce the lodestar amount for inadequate billing entries, <u>see</u> <u>DeGidio</u>, 920 F.2d at 533, the court refrains from doing so here because most of plaintiffs' records are detailed enough to permit a meaningful review of the reasonableness of the hours expended and because the court has already excluded those entries that are too vague to facilitate review.

21

The State also seeks a reduction of the lodestar amount for limited or partial success.  In Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court provided a framework for reducing an attorneys' fees award if the plaintiffs have not prevailed on all of their claims. See Emery, 272 F.3d at 1046.  First, the court must determine whether the lawsuit contains claims distinct from the claims upon which the plaintiff prevailed.  See Hensley, 461 U.S. at 435, 103 S. Ct. at 1940.  If the claims are in fact distinct, then the court should exclude hours expended on the non-prevailing claims.  If the claims are related, however, then the court evaluates the results obtained by the plaintiffs:

> Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.  But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Id. at 440, 103 S. Ct. at 1943; see also Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000).  "Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.'"  Emery, 272 F.3d at 1046 (quoting Hensley, 461 U.S. at 435, 103 S. Ct. 1933).

Here, plaintiffs sought the ability to perform abortions "not significantly beyond 13.6 weeks LMP" at their clinic in Sioux Falls, South Dakota, when the physician finds that performing the operation is in the best interests of the

patient.  (Docket 58, at ¶ 7).  It was the State's position,[7] however, that this was prohibited by SDCL 34-23A-6, which requires that all abortions performed after 13.6 weeks LMP[8] be performed "in a facility which has a blood bank or a sufficient supply of blood immediately available . . . ."  Because the State espoused this position, plaintiffs argued that SDCL 34-23A-6 was not enforceable because it was unconstitutional, and thus, the court should enjoin enforcement of the statute.  Then, literally on the eve of trial, plaintiffs and the State entered into a consent decree where the State conceded that there is a "sufficient supply of blood immediately available" for plaintiffs to perform abortions through 14 weeks, 6 days at plaintiffs' clinic in Sioux Falls, South Dakota because the clinic was located close enough to a hospital with a blood bank.

Now, the State argues that the court should reduce plaintiffs' fee award because plaintiffs did not prevail on their claims contending that 34-23A-6 violates the U.S. Constitution.  At the first step of the <u>Hensley</u> analysis, the

---

[7] Initially, plaintiffs stated that they did not comply with SDCL 34-23A-6; however, the court has previously recognized that plaintiffs were not aware of what it would take to comply with the requirement of a blood supply immediately available.  (Docket 176, at 4; Docket 179, at 3).  As such, plaintiffs' later contention that they complied with the requirements of 32-23A-6 was permissible.

[8] Actually, SDCL 34-23A-4 applies to all abortions performed after 12 weeks of pregnancy.  The State has represented, however, that this is equal to an abortion performed after 13 weeks, 6 days LMP.

court finds that plaintiffs' contention that they can perform abortions after 13 weeks, 6 days LMP without violating 34-23A-6 and their contention that 34-23A-6 violates the U.S. Constitution are related claims.  In essence, plaintiffs asserted multiple legal theories in an effort to achieve the same result—the ability to perform abortions slightly past 13 weeks, 6 days LMP at their Sioux Falls clinic.  This common core of facts applies to each of plaintiffs' claims, and thus, the claims are related.  See Emery, 272 F.3d at 1046-47.

The court's finding that the claims are related is guided by the Eighth Circuit's decision in Emery v. Hunt, 272 F.3d 1042 (8th Cir. 2001).  In Emery, plaintiffs contended that South Dakota's redistricting of certain legislative districts violated both the S.D. Constitution and the federal Voting Rights Act. The district court found the redistricting law violated the S.D. Constitution without reaching the issue of the Voting Rights Act.  Then, the district court denied recovery of attorneys' fees for time expended on the Voting Rights Act claim.  The Eighth Circuit reversed and found that the state claims, upon which plaintiffs prevailed, and the federal claims were related because "the ultimate goal of reestablishing the House Districts of 28A and 28B for the November 2000 election was the same" for both claims.  Id. at 1047. Similarly, plaintiffs here asserted multiple claims in an effort to obtain one common goal.

Because plaintiffs' claims are related, the court proceeds to the second step of the <u>Hensley</u> framework and evaluates the results obtained by plaintiffs on their related claims.  Here, the court finds that plaintiffs obtained excellent results warranting a full fee award.  From April 3, 2002, when plaintiffs filed their first amended complaint, they have sought one thing—the ability to perform an abortion slightly past 13 weeks, 6 days LMP.  (Docket 58, at ¶ 7). This is exactly what the consent decree provided, permitting abortions up to 14 weeks, 6 days.  Plaintiffs had no intention of providing abortions beyond 14 weeks because this would exceed PPFA's approval for services to be provided at the Sioux Falls clinic.  (Docket 265-3, at 3-5; Docket 273-2, at 2-3).  In short, plaintiffs achieved their entire goal.

The court's award of the full lodestar amount is further supported by the State's decision to employ a litigation strategy where the State contested virtually every issue in this case.  This strategy is best illustrated by the State's repeated insistence, including in its pretrial brief, that plaintiffs' current clinic location was too far from a hospital to comply with 34-23A-6's sufficient blood supply requirement.  (Docket 70, at 20; Docket 218).  In fact, the State contested discovery on what the State considered to be a sufficiently close blood supply.  (Docket 171; Docket 179).  Then, on Saturday night with the trial scheduled to begin the following Monday, the State acknowledged that plaintiffs' current clinic was sufficiently close to a hospital to have a

sufficient blood supply available as required by SDCL 34-23A-6.  Although the State had every right to vigorously litigate this case till the eve of trial, it "'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'"  <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 580 n.11, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (plurality opinion) (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 904 (D.C. Cir. 1980)).  Accordingly, the court awards attorneys' fees in the amount of $241,584.37 plus sales tax of 5.92 percent.[9]

## II.     Reasonable Costs and Expenses

Plaintiffs also seek recovery of $20,357.20 for costs and expenses incurred in the litigation.  Pursuant to Fed. R. Civ. P. 54, the court generally awards costs to a prevailing party.  <u>See</u> <u>Concord Boat Corp. v. Brunswick Corp.</u>, 309 F.3d 494, 499 (8th Cir. 2002).  Taxable costs under Rule 54 are limited to those costs enumerated in 28 U.S.C. § 1920.  <u>See</u> <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441, 107 S. Ct. 2494, 2497, 96 L. Ed. 2d 385 (1987).  In addition, a prevailing party can recover reasonable out-of-pocket expenses incurred by that party's attorney as part of a reasonable attorneys' fees award.  <u>See</u> <u>Pinkham v. Camex, Inc.</u>, 84 F.3d 292, 294-95 (8th

---

[9] Plaintiffs only request sales tax on the fees recovered by Crew.  Sales tax is recoverable on the fees for all the services provided in this case, however.  <u>See</u> SDCL 10-45-4.  Furthermore, the court's pro hac vice order authorizing Evans and Liu to appear on this matter requires each of them to file a state sales tax return and pay sales tax.

Cir. 1996).  Out-of-pocket expenses are only recoverable, however, if they are the type that are normally charged by attorneys to their clients.  See id.

The State asserts three objections to the amount of costs and expenses requested.  First, the State argues that the costs incurred by Liu to travel for depositions and preparation at trial was unreasonable.  In essence, the State is arguing that it was unreasonable for Liu to attend these depositions and the trial, and thus, her expenses incurred to do so are unreasonable.  The court disagrees.  The expense records indicate that Liu seeks reimbursement for travel expenses associated with 4 different trips.  The first 3 trips are dated May 8, 2005, May 22, 2005, and May 31, 2005, and were for depositions. Liu's fee records indicate that during each of these trips, she either took the deposition of one of the State's witnesses or defended the deposition of one of plaintiffs' witnesses.  In addition, Liu's fee records indicate that she was also responsible for examining these witnesses at trial.  The last trip was for the trial itself, where Liu would have been an active participant.  Because Liu actively participated in the depositions and was apparently planning to examine these witnesses at trial, the court finds that her travel to the deposition and to the trial was reasonable, and thus, her out-of-pocket travel expenses are recoverable.

The State also objects to recovery of the pro hac vice fee for Eve Gartner because Gartner never participated in the case.  Plaintiffs withdraw this request, and thus, the court will exclude this amount from the award.

Finally, the State objects to recovery of $807.55 requested for Federal Express costs.  The State argues that the billing entries are too vague for the court to determine whether the shipping costs were reasonable.  The court agrees.  Plaintiffs submit 23 different entries described as "Federal Express." There is no indication in the billing entries what was shipped or for what purpose.  The court acknowledges that most of the entries are near the scheduled trial date.  So, perhaps the entries were to ship plaintiffs' files to South Dakota.  Perhaps the costs were incurred for another purpose.  Simply put, these entries are too vague to permit meaningful review, and thus, the court excludes $807.55 requested for Federal Express costs.  See White, 935 F.2d at 970.

Except as stated above, the court finds that all the other out-of-pocket expenses requested are reasonable and recoverable.  Accordingly, the court awards plaintiffs costs and expenses in the amount of $19,449.65 ($20,357.20 – $907.55)

Based on the foregoing, it is hereby

ORDERED that plaintiffs' motion (Docket 252) for attorneys' fees and expenses is granted.

28

IT IS FURTHER ORDERED that plaintiffs are awarded attorneys' fees in the amount of $241,584.37 plus sales tax in the amount of $14,301,79.

IT IS FURTHER ORDERED that plaintiffs are awarded costs and expenses in $19,449.65.

Dated July 7, 2006.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE